FOURTH DIVISION

March 24, 2005

No. 1-04-0590

DAVID WALTERS, )

)  Appeal from

Plaintiff-Appellee, ) the Circuit Court

) of Cook County.

v. )

) 

THE DEPARTMENT OF LABOR, )

)

Defendant-Appellant )    

)  No. 03 CH 3562 

(Michelle Schuck, Eileen Manta, )   

Bonny Taylor, Heather Emerson, )  

Deborah Moore, Allan Williams, ) 

Johnnie Addison, Luis Diaz, and ) 

Elba Gonzalez, )  Honorable 

)  Peter Flynn,

Defendants). ) Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Defendant, the Illinois Department of Labor (Department), appeals from an order of the circuit court of Cook County reversing the Department’s determination in a wage payment demand that plaintiff, David Walters, violated the Illinois Wage Payment and Collection Act (the Act) (820 ILCS 115/1 
et seq. 
(West 2002)).  The Department contends that (1) the circuit court lacked jurisdiction to review its determination; and (2) the circuit court erred in finding that the determination of the hearing officer was against the manifest weight of the evidence.  For the following reasons, we find the Department’s wage payment demand is not subject to administrative review and vacate the judgment of the circuit court.

BACKGROUND

Walters was the president, chief executive officer, and 100% shareholder of FGI Print Management, Inc. (FGI).  The company began operations in 1976, but by 2001, it was experiencing financial difficulties and ultimately ceased operating after selling its assets.  Thereafter, several former FGI employees filed wage claim applications with the Department pursuant to the Act, alleging that FGI failed to pay them for unpaid vacation time. 

On October 23, 2002, a hearing officer from the Department conducted an informal investigative hearing pursuant to section 300.950 of the Illinois Administrative Code (the Code) (56 Ill. Adm. Code §300.950 (2002)).  The issue at the hearing was whether Walters was personally liable for the vacation pay owed to the nine claimants.  The Code provides that an officer of a corporation may be personally liable under section 13 of the Act for final compensation when the officer “actively asserted substantial control over the management and financial affairs of the corporation.”  56 Ill. Adm. Code §300.620 (2002). 

Pursuant to Department regulations, there is no formal record of this hearing.  However, the hearing officer’s findings were set forth in the wage payment demand as follows.  Walters argued that he had no control over the management and financial affairs of the corporation because, during the period of time at issue, the bank had frozen FGI’s assets, and shortly thereafter, FGI assigned its assets for the benefit of creditors to High Ridge Partners, Inc.  The hearing officer rejected Walters’ argument, finding that he indeed had control over the management and financial affairs of the corporation.  Her determination was based upon certain severance payments and commissions that had been paid to other former employees during the relevant time period.

On January 6, 2003, the Department issued its wage payment demand to Walters, indicating that its investigation of the matter disclosed “apparent” violations of the Act.  The Department demanded that Walters pay the nine claimants the total sum of $26,975.47.  In addition to demanding compliance, the Department addressed the penalties for failure to comply, indicating that “[c]onviction under the Act carries a maximum penalty of imprisonment for up to 30 days and/or a fine, not to exceed $500.00 for each day a respondent employer willfully refuses to pay a claimant’s *** final compensation.”

On January 24, 2003, Walters filed a timely request for review of the hearing officer’s determination as provided for by the Code.  On January 31, 2003, the chief administrative law judge of the Department denied Walters’ request for review.  The letter “requested” that Walters comply with the demand and informed him that his failure to do so would “result in referral of this matter to the office of the Attorney General or the local State’s Attorney for prosecution under the provisions of the Act.”  Thereafter, on February 13, 2003, Walters tendered full payment in compliance with the wage payment demand, expressing his desire to appeal the determination and avoid an accumulation of penalties. 

Subsequently, on February 24, 2003, Walters filed a complaint in the circuit court, seeking administrative review of the Department’s determination that Walters was personally liable for the vacation pay owed to the nine claimants.  Thereafter, he was granted leave to file an amended complaint.  In count I, he sought administrative review of the wage payment demand, and in count II, he sought a declaratory judgment.  The Department filed a motion to dismiss, arguing that Walters failed to state a right entitling him to administrative review and that he failed to allege an actual case or controversy because he had already paid the claimants.  The circuit court dismissed the declaratory judgment count, but denied the motion to dismiss count I for administrative review.  On January 27, 2004, the circuit court granted a request to treat count I as a request for a common law writ of 
certiorari
, and granted the writ after determining that the decision of the hearing officer was against the manifest weight of the evidence.  Thereafter, the Department filed its timely notice of appeal.

ANALYSIS

The Department initially contends that the circuit court lacked jurisdiction to address the merits of Walters’ complaint because the Department’s determination was not subject to administrative review either under the provisions of the Administrative Review Law (735 ILCS 5/3-101 
et
 
seq.
 (West 2002)) or by common law writ of 
certiorari
.  This is an issue of first impression in Illinois.  

Although the Illinois Constitution grants an appeal 
as a matter of right from all final judgments of the circuit court (Ill. Const. 1970, art. VI, 
§ 
6), there is no constitutional right to appeal administrative decisions.   Rather, the appellate and circuit courts have only such powers to review administrative actions "as provided by law."  Ill. Const. 1970, art. VI, 
§ 
6 (appellate court); Ill. Const. 1970, art. VI, 
§ 
9 (circuit court).  See also 
ESG Watts, Inc. v. Pollution Control Board
, 191 Ill. 2d 26, 29, 727 N.E.2d 1022, 1024 (2000).  Thus, w
hether, and to what extent, an action by an administrative agency is reviewable is a question of statutory interpretation. 
 
Hanrahan v. Williams
,
 174 Ill. 2d 268, 273, 673 N.E.2d 251, 254 (1996).  "While most agency actions are presumed reviewable, no presumption arises if there is 
a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion."  
Hanrahan
,
 174 Ill. 2d at 273, 673 N.E.2d at 254.  Factors to consider in determining whether the relevant statute precludes judicial review of the administrative decision include the statute's express language, the structure of the statutory scheme, the statute's objectives, legislative history, and the nature of the administrative action involved. 
 
Hanrahan
,
 174 Ill. 2d at 273, 673 N.E.2d at 254.

The Department is correct that the legislature has not expressly provided for administrative review under this statutory scheme.  The Administrative Review Law applies only where it is expressly adopted by reference in the act creating or conferring power upon the administrative agency involved.  735 ILCS 5/3-102 (West 2002).  Accordingly, where the Act empowering the Department does not expressly provide for such review, the determination of the Department cannot be reviewed under the Administrative Review Law.  735 ILCS 5/3-102 (West 2002); 
Rekhi v. Wildwood Industries, Inc.
, 61 F.3d 1313, 1319 (7th Cir. 1995).  

When judicial review cannot be had under the Administrative Review Law, and the statute conferring power on the agency provides for no other form of review, the common law  writ of 
certiorari
 is a general method for reviewing the action of agencies exercising administrative functions.  
Hanrahan
, 174 Ill. 2d at 272, 673 N.E.2d at 253; 
Stratton v. Wenona Community Unit District No. 1
, 133 Ill. 2d 413, 427, 551 N.E.2d 640, 645 (1990).
  The common law writ of 
certiorari
 was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain a limited review of an action by a court or “other tribunal exercising quasi-judicial functions.”  
Stratton
, 133 Ill. 2d at 427, 551 N.E.2d at 645.  “Quasi-judicial proceedings are designed to adjudicate disputed facts in a particular case.”  
East St. Louis School District No. 189 Board of Education v. Financial Oversight Panel
, 349 Ill. App. 3d 445, 449, 811 N.E.2d 692, 697 (2004). 

Accordingly, in determining whether administrative review is applicable here, we must consider whether the Department engaged in a quasi-judicial function in processing the wage claims.  Section 11 of the Act specifically addresses the general powers and duties conferred on the agency.  Under section 11(a), the Department may investigate wage claims and “attempt equitably to adjust controversies between employees and employers.”  820 ILCS 115/11(a) (West 2002)
.  Under section 11(b), the Department has the power to take assignments of wage claims and prosecute actions for the collection of wages.  820 ILCS 115/11(b) (West 2002).  Section 11(c) provides that the claimant, as well as the Department, can file a complaint for violations of the Act in the trial court.  820 ILCS 115/11(c) (West 2002).  The Department has the discretion to pursue any of these particular remedies under section 11, but is not mandated to do so.  820 ILCS 115/11 (West 2002). 

 In the present case, the Department chose to act under section 11(a) to investigate and attempt to equitably resolve the wage claims of the nine claimants.  This court has previously addressed the Department’s role under this section by examining the preclusive effect of its determinations in subsequent lawsuits.  Those cases have held that the role of the Department in processing and resolving wage claims in this manner remains purely investigatory and that the agency has no binding adjudicatory power in this capacity.   
Zabel v. Cohn
, 283 Ill. App. 3d 1043, 1052, 670 N.E.2d 877, 882 (1996).  “Actual liability, if contested, must be determined by the trial court on a 
de novo 
basis ***.”  
Zabel
, 283 Ill. App. 3d at 1052, 670 N.E.2d at 882.  See also 
Nagel v. Gerald Dennen & Co.
, 272 Ill. App. 3d 516, 524, 650 N.E.2d 547, 553 (1995) (proceedings before the Department are investigatory in nature); 
Rekhi v. Wildwood Enterprises, Inc.
, 219 Ill. App. 3d 312, 316, 579 N.E.2d 1189, 1191 (1991) (initial determination by Director of Labor cannot be used to establish liability in trial court); 
Miller v. J.M. Jones Co.
, 198 Ill. App. 3d 151, 154, 555 N.E.2d 820, 822 (1990) (Department’s proceedings are not judicial in nature); 
Stafford v. Bowling
, 85 Ill. App. 3d 978, 981, 407 N.E.2d 771, 774 (1980) (“The Department can only assist an employee in vindicating his right to wages.  It cannot create or dispose of the employee’s or the employer’s rights”)
.  Thus, in issuing its wage payment demand, the Department functioned in an investigatory, rather than in an adjudicatory, manner.  

The Department’s own regulations support the finding that the action taken by it in the present case remained investigatory and not adjudicatory.  Section 300.950 of the Code provides in pertinent part:  

“When the Department is unable to resolve a dispute upon review of the information submitted by the parties, the Department may schedule an informal investigative hearing before a Hearing Officer.  The Department conducts hearings to obtain further information; to determine if any violation of the Act exists; to attempt to resolve the matter equitably; and to decide whether there is sufficient evidence to recommend court action.”  56 Ill. Adm. Code §300.950 (2002).

Thus, according to the Department’s own regulations, the purpose of the informal investigative hearing was not to adjudicate the rights of the parties, but to gather information, to determine whether an employer violated the Act, to attempt to equitably resolve the matter, and to decide whether to recommend further proceedings.  

The wage payment demand issued to Walters further supports that finding.  It states that the Department found “apparent” violations of the Act.  Furthermore, the letter issued by the chief administrative law judge makes a “request” that Walters comply with the demand.  Additionally, the letter indicates that his “failure to comply will result in referral of this matter to the office of the Attorney General or the local State’s Attorney for prosecution under the provisions of the Act.”  Accordingly, while the Department had the power to attempt to equitably resolve the matter, it did not adjudicate Walters’ rights or the employees’ rights because its initial determination had no preclusive effect on the parties.

  In the past, the supreme court has found that when an agency acts in a purely investigative manner, its determination is not subject to administrative review.  
National Marine, Inc. v. Illinois Environmental Protection Agency
, 159 Ill. 2d 381, 639 N.E.2d 571 (1994).  For example, in 
National Marine
, the Illinois Environmental Protection Agency (IEPA) issued a notice informing the plaintiff that it could be potentially liable for a “‘release or a substantial threat of a release of a hazardous substance’” on the property.  
National Marine
, 159 Ill. 2d at 383, 639 N.E.2d at 572.  This notice was based on the IEPA’s findings after an investigation that the property contained buried drums, tires, and wood, stained soil near an underground storage tank, and an abandoned well house.  The plaintiff sought a declaratory judgment that the notice provision of the Environmental Protection Act was unconstitutional, an injunction enjoining the IEPA from enforcement arising from the notice or relying on the factual findings in the notice, and the issuance of a writ of 
certiorari
 to review the IEPA’s record and reverse and quash the notice.  
National Marine
, 159 Ill. 2d at 384, 639 N.E.2d at 572 . 

The court stated that the role of the IEPA was to investigate potential violations of the Environmental Protection Act and prosecute violators before the Pollution Control Board, and that the IEPA had no adjudicatory function.  
National Marine
, 159 Ill. 2d at 390, 639 N.E.2d at 575.  The court further found that the plaintiff’s complaint essentially sought judicial review of the IEPA’s notice prior to the agency’s initiation of cost recovery or enforcement proceedings before the Pollution Control Board or the circuit court.  Although the notice included the identified response action and an opportunity for the plaintiff to perform that action, ultimately, if the plaintiff did not voluntarily respond, the IEPA would have to prove a violation of the Environmental Protection Act either before the Board or through the Attorney General in the circuit court. 
 
National Marine
, 159 Ill. 2d at 390, 639 N.E.2d at 575.  The court held that “at this preliminary stage in the administrative process, it is not clear whether the Agency will even initiate a cost-recovery/enforcement proceeding against plaintiff before one of these bodies.”  
National Marine
, 159 Ill. 2d at 390, 639 N.E.2d at 575.  Accordingly, the court found the agency’s investigative action was not a final agency decision ripe for judicial review.  
National Marine
, 159 Ill. 2d at 390-91, 639 N.E.2d at 575.  

Here, as in 
National Marine
, the wage payment demand essentially requested that Walters pay the claimants, or be subject to referral for prosecution and possible criminal penalties.  If Walters contested the demand, the claimants, the Department, or the Attorney General would then have the burden of proving actual liability in the circuit court if they chose to pursue enforcement.  
Zabel
, 283 Ill. App. 3d at 1052, 670 N.E.2d at 882.  Walters could then seek judicial review of that finding in the appellate court.  However, since Walters paid the claimants, no enforcement proceedings were ever instituted.  Accordingly, for all of the foregoing reasons, the wage payment demand did not adjudicate any rights and the Department was not acting in a quasi-judicial role.  Consequently, the demand was not subject to administrative review under the common law writ of 
certiorari
. 

Walters maintains that the wage payment demand did indeed adjudicate his rights  because it subjected him to immediately accruing civil and criminal penalties from which he must have an avenue of review.  Walters cites to section 14 of the Act in support of his proposition.  Section 14 provides in pertinent part as follows:

“(a) Any employer *** who, being able to pay wages, final compensation, or wage supplements and being under a duty to pay, wilfully refuses to pay as provided in this Act, *** upon conviction, is guilty of a Class C misdemeanor.  Each day during which any violation of this Act continues shall constitute a separate and distinct offense.  

(b) Any employer who has been 
ordered
 by the Director of Labor or the court to pay wages due an employee and who shall fail to do so within 15 days after such 
order
 is entered shall be liable to pay a penalty of 1% per calendar day to the employee for each day of delay in paying such wages to the employee up to an amount equal to twice the sum of unpaid wages due the employee.

(c) Any employer, *** who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his employer, or to the Director of Labor or his authorized representative, that he or she has not been paid in accordance with the provisions of this Act, or because that employee has caused to be instituted any proceeding under or related to this Act, or because that employee has testified or is about to testify in an investigation or proceeding under this Act, is guilty, upon conviction, of a Class C misdemeanor.” (Emphasis added) 820 ILCS 115/14 (West 2002).

Thus, section 14 encompasses three distinct penalties arising out of specific conduct.  Sections 14(a) and (c) refer to the criminal penalties and subject the employer to a misdemeanor for either the willful failure to pay wages or final compensation, or the retaliatory discharge of an employee.  820 ILCS 115/14(a), (c) (West 2002).   

These provisions do not subject Walters to immediately accruing criminal penalties which would necessitate administrative review because both of these provisions require prosecution in the trial court with the criminal burden of proof beyond a reasonable doubt.  820 ILCS 115/14(a), (c) (West 2002).  Thus, Walters would be entitled to proper due process and the requisite hearing from which he would then be entitled to appeal.    

Nor do we find that the provisions in section 14(b) subject Walters to immediately accruing civil penalties which would necessitate administrative review.  Section 14(b) specifically provides for a civil penalty only in the situation where an 
order
 to pay wages has been entered by the Department or a court.  However, the Department has no authority under the Act to issue an order to pay wages stemming from an informal investigative hearing.  We are mindful that administrative bodies are creatures of statute and possess no general or common law powers.  Any power or authority of an administrative agency “must find its source within the provisions of the statute by which the agency was created.”  
Vuagniaux v. Department of Professional Regulation
, 208 Ill. 2d 173, 187-88, 802 N.E.2d 1156, 1165 (2003).

As articulated previously, section 11 sets forth the powers of the Department and limits its power to a nonadjudicatory role.  The only section of the Act that explicitly grants the Department any power to issue “orders” is section 9.  That section is entitled “Deductions from wages or final compensation” and provides in pertinent part as follows:

“ Where the legitimacy of any deduction from wages is in dispute, the amount in question may be withheld if the employer notifies the Department of Labor on the date the payment is due in writing of the amount that is being withheld and stating the reasons for which the payment is withheld.  Upon such notification the Department of Labor shall conduct an investigation and render a judgment as promptly as possible, and shall complete such investigation within  30 days of receipt of the notification by the employer that wages have been withheld.  
The employer shall pay the wages due upon order of the Department of Labor within 15 calendar days of issuance of a judgment on the dispute
.”  (Emphasis added) 820 ILCS 115/9 (West 2002).

Under this section, if the employer fails to pay within the 15 days, the penalties imposed under section 14(b) would then be applicable.  820 ILCS 115/14(b) (West 2002).  

However, the parties agree that section 9 does not apply to these proceedings where Walters never made a “deduction” from the claimants’ wages or final compensation.  Nor did the Department follow any of the procedures set forth in section 9 that would be applicable to its issuance of an “order” consistent with that section.  Thus, the Department’s authority to issue “orders” and render a “judgment” as set forth specifically in section 9 is not applicable here.  Since the Department has no other authority in this case to issue orders, Walters is not subject to immediately accruing civil penalties under section 14(b) and a writ of 
certiorari
 would be inappropriate for the reasons stated previously.    

   While we recognize that some cases have suggested that the Department has authority to issue orders, these cases have equivocated at best in finding “implicit” authority under section 14 and have struggled with the internal inconsistency between the Department’s “implicit” right to issue orders and its nonadjudicatory function.  For example, in 
Stafford v. Bowling
, 85 Ill. App. 3d 978, 407 N.E.2d 771 (1980), the court noted that the Department is “implicitly” required to act like a court and issue orders, referring to section 14, but gave no reasoned analysis and ultimately found that the Department’s determination had no binding effect on the parties.  
Stafford
, 85 Ill. App. 3d at 980-81, 407 N.E.2d at 774.  In 
Miller
, the court stated, “[s]ection 14(b) is the only part of the Act which 
might
 indicate the existence of a right * * * to make a binding determination.”  (Emphasis added.) 
Miller
, 198 Ill. App. 3d at 153, 555 N.E.2d at 822.  However, the court found that the right to make a binding determination would be inconsistent with the Department’s role in assisting, representing and protecting the employee’s interests.  
Miller
, 198 Ill. App. 3d at 155, 555 N.E.2d at 822.  While the Seventh Circuit in 
Rekhi
 stated that the penalty provision in section 14(b) grants the Department the power to issue an “order,” it also stated that,  “[c]onceivably, the Department’s orders have no binding force and simply bolster an employee’s claim, in a subsequent suit under the Act, for punitive damages.”  
Rekhi
, 61 F.3d at 1319.  

To hold that section 14 “implicitly” grants the Department the power to issue binding orders stemming from a purely informal investigative hearing would be inconsistent with the legislature’s clearly articulated grant of authority in section 11.  Instead, a consistent and logical reading of the statute requires us to hold that the Department has no authority to issue orders except where specifically provided for under section 9 proceedings and that the penalty provision in section 14(b) confers no additional authority on the Department inconsistent with the limited powers conferred on it by section 11.       

Indeed, at oral argument in this case, the Assistant Illinois Attorney General acknowledged that the wage payment demand issued by the Department is not an order and that the demand does not have the characteristics of an order.  As stated previously, the demand refers to “apparent” violations of the Act.  Additionally, while the demand specifically states that Walters “shall” pay and references the possibility of criminal penalties in section 14(a), it makes no mention and provides no notice of any immediately accruing civil penalties to Walters under section 14(b) for his failure to pay.            

Accordingly, where the statute does not expressly provide for the Department to issue any orders except under limited circumstances under section 9, and where the wage payment demand does not have the binding force of an “order” subjecting Walters to the imposition of immediately accruable civil penalties, the penalty provision under section 14(b) is not applicable to Walters.  Consequently,  there has been no adjudication of rights that would allow the trial court to grant a writ of 
certiorari
. 

Accordingly, for all of the foregoing reasons, the circuit court lacked jurisdiction to review the wage payment demand under a writ of 
certiorari
, and we must vacate its judgment. 

Circuit court judgment vacated.

REID, P.J., and GREIMAN, J., concur.